# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ISAAC AVENDANO, *et al.*,

Plaintiffs,

v.

SECURITY CONSULTANTS GROUP,

*et al.*,

Defendants.

3:13-cv-00168-HDM-VPC

**<u>ORDER</u>**

## I.    INTRODUCTION

This litigation presents claims arising out of the employment of Isaac Avendano and Rolando Duenas ("plaintiffs") as federal building security officers.  On April 3, 2013, plaintiffs filed a complaint against Security Consultants Group, Inc., Paragon Systems, Inc., Securitas Security Services USA, Inc. ("corporate defendants"), and also United Government Security Officers of America ("UGSOA"), Local 283 and its International Union ("union defendants") (#1).  In their amended complaint, plaintiffs allege several theories of racial and national origin discrimination under Title VII, 42 U.S.C. 2000e *et seq.* (#58 at 2).  Plaintiffs also state claims under Nevada law, § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and 42 U.S.C. § 1981.  Against only the union defendants, plaintiffs allege a breach of the duty of fair representation.  (#58 at 53-57).

### A.    The Tucker Firm's Prior Representation of Union Defendants

Prior to this litigation, plaintiffs' counsel, John Tucker ("Tucker") and Rachel Baldridge ("Baldridge") of John A. Tucker Co., LPA (together, the "Tucker firm") represented the UGSOA International Union and its affiliates for several years.  The representation included legal work on

behalf of union defendants in arbitration proceedings held on several dates in January and April 2012, in which union defendants grieved corporate defendants' termination of plaintiffs.  (#s 47-1 at 2, #75-3 at 2).  In May 2012, during the pendency of the grievance arbitration, union defendants terminated their representation by the Tucker firm.  (#47-1 at 2).

In October 2012, plaintiffs hired the Tucker firm to represent them in enforcing an award that resulted from the January and April arbitration proceedings, and also in related legal matters.  (#75-3 at 3).  In the same month, union defendants learned of the Tucker firm's representation of plaintiffs. (#43-1 at 2).  Thereafter, union defendants authorized Robert B. Kapitan ("Kapitan"), their new general counsel, to file complaints against Tucker and Baldridge with the Disciplinary Counsel of the Ohio Supreme Court ("ODC").   (#75-3 at 4; #109-1 at 2).   The principal bases of the ODC complaints were an alleged conflict of interest under the Ohio Rules of Professional Conduct in the Tucker firm's representation of plaintiffs, given its professional obligations to its former union clients. (#75-3 at 4; #109-1 at 2-3).

In a letter dated October 30, 2013, ODC Assistant Counsel Stacy Solocheck Beckman ("Beckman") wrote to Kapitan and notified him that the ODC had dismissed the complaints.  (#75-19).  Beckman explained that the Tucker firm's representation of plaintiffs in this case was adverse to union defendants' interests, but the matter did not appear to be "substantially related" to the firm's past representation of union defendants.  (#75-19 at 2).  In addition, no evidence before the ODC suggested that the Tucker firm had improperly used union defendants' confidences.  (#75-19 at 2). Therefore, the ODC closed the matter.  (#79-19 at 2).

**B.     The January 10, 2014 Emergency Hearing**

As the ODC reviewed Kapitan's complaints against Tucker and Baldridge, litigation in this court commenced.  Pursuant to this District's Local Rules, the parties participated in an Early

Neutral Evaluation ("ENE") session on October 24, 2013 before Magistrate Judge Cobb (#35). The parties did not settle, and they received little meaningful evaluation of their claims and defenses due to insufficient information exchange. Because Judge Cobb perceived that additional discovery would aid early resolution of the case, he entered an order requiring targeted, expedited discovery and continuance of the ENE at a later date (#37). Pursuant to Judge Cobb's order, the parties were to then participate in the resumed ENE on January 23, 2014 (#39).

Plaintiffs filed an emergency motion with the court on January 6, 2014 (#41). On January 10, 2014, this court held a hearing on the motion (#48). Tucker explained that he filed the motion because he learned from Kapitan on January 3, 2014 that union defendants would not comply with noticed depositions and discovery requests. (#48 at 3). Kapitan explained that the basis for union defendants' noncompliance was the alleged conflict of interest in the representation of plaintiffs by the Tucker firm. (#48 at 4:17-5:25). Specifically, union defendants believed that "with Mr. Tucker's firm participating, . . . a chance of confidential information being used against the Union defendants is very high . . . ." (#48 at 6:13-15). Kapitan informed the court that union defendants would move for disqualification and also for a discovery stay, both of which he planned to file in the near future. (#48 at 6:15-19).

In a series of exchanges, which ultimately led to this order, the parties traded accusations regarding the status of Kapitan's disqualification complaints before the ODC. In several separate remarks, Kapitan stated that the ODC matter was "pending," "still pending," that his clients decided they "could not wait anymore for the Ohio Supreme Court to review this [alleged conflict of interest]," and that union defendants "believe that the confidential procedure before the Ohio Supreme Court may resolve the issue." (#48 at 5:1-10, 5:17-19, 13:11-13). Tucker challenged these representations by repeatedly asserting that the ODC had already closed the matter, and further, that

Kapitan had actual knowledge that the matter had been "resolved on October 30th." (#48 at 7:9-11; *see also* #48 at 12:6-9).

In light of the information shared by the parties regarding the ODC complaints, about which the court learned for the very first time at the hearing, the court issued several orders. First, the court stayed discovery as requested by Tucker; second, it recommended to Judge Cobb that he vacate the order for a second ENE; and finally, it ordered Kapitan to file within one week the disqualification motion against the Tucker firm. (#48 at 14:7-15:7).

**C.    Tucker's ODC Complaint Against Kapitan**

Shortly thereafter, and unbeknownst to the court at the time, Tucker filed an ODC complaint against Kapitan. (#109-6 at 1). Tucker's ODC complaint asserted several ethical violations by Kapitan, only one of which is relevant here: Kapitan's representations at the emergency hearing. In a letter dated April 7, 2014, the ODC wrote to Tucker and informed him that it had closed the matter. (#109-6 at 1). Kapitan received a copy of the letter. (#109-6 at 2). In short, the ODC surmised that Kapitan's January 10 characterizations of the ODC matter against Tucker as "pending" owed to his confusion about the ODC's procedure and policies. (#109-6 at 2). The ODC also described that procedure: after investigation, the ODC will formally close matters, but will it also tell grievants that subsequently submitted evidence may persuade the ODC to reopen a closed complaint. (#109-6 at 2). However, despite the acceptance of additional evidence, the ODC has no formal process for reopening a dismissed complaint. (#75-3 at 4). At bottom, the possibility of additional evidence does not render a matter "pending" after it has been closed. (#109-6 at 2).

**D.    The Motion to Disqualify**

As ordered by the court at the emergency hearing, union defendants timely filed on January 17, 2014 a motion to disqualify the Tucker firm from representing plaintiffs (#47). After reviewing

the briefs of the parties, the court denied the motion on June 2 (#89).  The court reasoned that union defendants provided only vague, conclusory affidavits in support of their motion; therefore, they failed to establish that this litigation is "substantially related" to the Tucker firm's prior representation of union defendants.  (#89 at 15).

### E.      The Sanction Motions

Following the court's decision on the disqualification motion, plaintiffs filed several sanctions motions.  On June 11, 2014, plaintiffs moved for sanctions under Federal Rule 11 against union defendants (#92) and corporate defendants (#93).  The basis for the motion against union defendants was the purportedly improper disqualification motion.  (#92 at 6).  The next day, plaintiffs moved for sanctions under 28 U.S.C. § 1927 and Local Rule 1A-4(d) against union defendants (#94) and corporate defendants (#95).  Among the bases for the second motion against union defendants were Kapitan's characterizations of the ODC complaints against the Tucker firm during the emergency hearing.  (#94 at 3-5, 10).  The parties' papers parsed Kapitan's hearing statements in contrasting manners.

The court denied the four sanctions motions on September 12, 2014 (#104).  As to the union defendants, the court concluded that the relevant facts did not support findings under Rule 11 and § 1927 that union defendants acted without evidentiary support or with an improper purpose in seeking disqualification of plaintiffs' counsel.  However, cautioning that "[a]t the very minimum, a discrepancy exists between Kapitan's statements," and "of further concern is the fact that Kapitan remained silent when the court referred to 'whatever is pending before the Ohio State Bar,'" the court apprised the parties that it would issue an order to show cause to address these issues.  (#104 at 11).

**F.     The Order to Show Cause**

On September 12, 2014, the court issued a show cause order against Kapitan and union defendants (#105).  Therein, the court excerpted several inconsistent representations that Kapitan made to this court at the emergency hearing and in other papers.  The order required:

> 1.  Within twenty-one days (21) of the date of this order, counsel for union defendants Robert B. Kapitan SHALL FILE a brief to show cause why he and/or union defendants should not be sanctioned pursuant to this court's inherent power for knowingly making repeated misrepresentations to this court.
>
> 2.  Plaintiffs shall file their response, if any, within fourteen (14) days of the date of service of union defendants' brief.
>
> 3.  All factual assertions in either brief shall be supported by affidavit or other authenticated exhibits.

(#105 at 5) (emphasis original).  Kapitan timely filed a brief on October 3 (#109) and a supplemental brief on October 16 (#110).  Plaintiffs' counsel timely responded on October 20 (#113).  Three days later, plaintiffs moved the court to strike Kapitan's briefs and related documents (#114).  On November 19, the court granted and denied in part plaintiffs' motion to strike (#120).

This order follows.

## II.     FINDINGS OF FACT

The following facts are established by clear and convincing evidence in the record.

**A.     Introduction**

1.     Robert B. Kapitan was admitted to the practice of law on November 13, 2001 as a member of the Ohio Bar, and represents union defendants in this matter *Pro Hac Vice*.  (#30).

2.     Kapitan is general counsel of the United Government Security Officers of America International Union.  In this capacity, he represents both the International Union and also Local 283.  (#30).

3.     John Tucker and Rachel Baldridge, of John A. Tucker Co., LPA, represent plaintiffs Isaac Avendano and Rolando Duenas and appear *Pro Hac Vice*.  (#s 4, 91).

4.     Tucker previously represented union defendants as general counsel for nearly thirteen years.  In this capacity, he represented the UGSOA International Union and its affiliates in nearly all of their legal matters.  (#47-1 at 2).

5.     On May 11, 2012, Tucker's representation of the union defendants ended.  (#47-1 at 2).

6.     Plaintiffs hired Tucker and Baldridge in October 2012 for representation that eventually led to the filing of this case.  (#75-3 at 3).

7.     No later than November 2012, Kapitan began representing union defendants as their general counsel.  (#75-15).

8.     In December 2012, union defendants authorized Kapitan to file a complaint against Tucker and Baldridge with the Disciplinary Counsel of the Ohio Supreme Court ("ODC").  (#109-3 at 3).

9.     The principal basis of the ODC complaint was what Kapitan and union defendants believed to be a conflict of interest in the Tucker firm's representation of plaintiffs, in matters related to and including this litigation, due to the firm's past representation of union defendants.  (# 43-1 at 2-3; #75-3 at 3-4; #109-1 at 2-3).

10.     While the ODC's review of the complaint and potential disqualification was pending, plaintiffs filed this case.  In June 2013, Kapitan contacted the ODC and supplemented his pending ODC complaints against Tucker and Baldridge with plaintiffs' Complaint.  (#109-3 at 2).

11.     The ODC conducted an investigation, which included submission of documents by the Tucker firm regarding its past representation of union defendants and its present representation of plaintiffs.  (#74-3 at 4).

12.     On October 30, 2013, the ODC dismissed the complaint; therefore, the matter was no longer "pending" as of that date.  (#75-19).  ODC Assistant Counsel Stacy Solocheck Beckman addressed a letter to Kapitan, which stated in pertinent part: "because our investigation did not reveal substantial, credible evidence of misconduct by either [Tucker or Baldridge], we are dismissing your complaint and closing our file on this matter is closed [sic]." (#75-19 at 3).

13.     Tucker and Baldridge were copied on the ODC's October 30, 2013 letter, and, therefore, they knew on or around that date that the matter had been dismissed.  (#75-19 at 3).

14.     Following the receipt of Beckman's letter, in November 2013, Kapitan spoke with Beckman.  He "was told that we [Kapitan and union defendants] could submit additional evidence and the investigation could be re-opened."  (#109-3 at 2).  Beckman informed Kapitan he could submit new information if or when it became available.  (#109-3 at 2).  As of April 2014, Kapitan had submitted no new evidence to the ODC.  (*See* #94-5).

15.     Following this conversation, and despite Beckman's statements therein, Kapitan "knew that the Office of Disciplinary Counsel decided not to pursue a formal complaint . . . ." (#109-3 at 3).

**C.     Kapitan Repeatedly Misrepresented that the Status of the ODC Matter**

16.     The court held an emergency hearing on January 10, 2014 (#48) to consider the positions of the parties on a motion filed by plaintiffs.  The motion sought the court's intervention in a discovery dispute regarding depositions and written discovery, which the court had earlier ordered to facilitate an Early Neutral Evaluation ("ENE") session to occur on January 23, 2014.

17.     Kapitan appeared on behalf of union defendants.  In explaining his clients position on the discovery dispute, Kapitan brought to the court's attention, for the first time, the alleged conflict of interest, potential for disqualification, and the ODC complaints against Tucker and Baldridge.  He specifically said:

> [I]t was stated in the ENE session in October, at that time a complaint was pending before the Ohio Supreme Court regarding John Tucker Company LPA's practices after the representation of the Union defendants ceased in May 2012.  Mr. Tucker's firm represented the Union defendants, we believe for approximately 13 years, up until May 2012, including handling the grievance and arbitrations for Isaac Avendano and Rolando Duenas, the plaintiffs in this case.  *That Complaint was pending before the Ohio Supreme Court in October*. . . . [W]e received something in the beginning of November from the Supreme Court saying that they weren't proceeding to a Complaint.  And then in further discussions, they did agree to take further evidence regarding this litigation.  *So, the case, actually, is still pending*.
>
> . . . But after that, after those events in early November, and then after the Union defendants received the discovery requests from plaintiffs, it was decided that *we could not wait anymore for the Ohio Supreme Court to review this*.  We would have to actually seek this Court's review of the John A. Tucker and LPA's disqualification in this case.  The two matters are so closely related—in fact, just we believe these claims, the hybrid 301 claims against Union defendants are essentially an extension of the case that Mr. Tucker and Ms. Baldridge handled on behalf of the Union defendants, that there's a clear conflict of interest.

(#48 at 4:17-5:25) (emphasis added).

18.     The court asked for Tucker's response to these contentions.  Tucker informed the court that the disciplinary matters before the ODC against him and Baldridge had been closed: in his own words, the matter "was resolved on October 30th" and "in fact, attorney Kapitan was aware of that." (#48 at 7:10-11).  These statements were consistent with the text of the October 30, 2013 ODC letter, which Kapitan had received. *See* ¶¶ 12-13

19.     By these statements, Tucker correctly and truthfully communicated the status of the ODC matter to the court.  Further, these statements accurately characterized what the ODC had informed Kapitan about the matter's status on October 30, 2013.

20.     Kapitan then responded.  He indicated that he had made no earlier mention of the ODC matter due to the ODC's confidentiality requirements.  (#48 at 9:10-17).  He further explained that the disqualification motion planned for this court awaited an affidavit, which he hoped to shortly receive.  (#48 at 9:18-23).  In responding to other questions to the court, he again reiterated the bases for disqualification.  (#48 at 11:4-23).

21.     During this exchange, however, Kapitan did not address Tucker's factually accurate representation that the ODC disqualification matter had been closed.  Similarly, he did not expand his prior explanation by clarifying that although the matter had been closed, he and union defendants would later pursue the matter by submitting additional information about this litigation, as Beckman apparently suggested.  (*See* #48 at 9-11).

22.     The court invited Tucker's reply to Kapitan's remarks.  Tucker declined to engage the substance of the disqualification matter because, as he again emphasized, "[t]he Ohio Supreme Court has ruled on that matter."  (#48 at 12:6-7).  Further, Tucker attested that he was unaware of "anything else that's pending" before the ODC related to his representation of plaintiffs.  (#48 at 12:7-8).

23.     Kapitan asked the court for permission to reply.  The court granted his request. He remarked:

> [t]hese types of issues are not waived if they're not brought by a certain time period. In fact, this case is still relatively in, in the beginning stages.  This matter is being raised now because discovery is just starting.  *And we believe that the confidential procedure before the Ohio Supreme Court may resolve the issue.*  It did not prior to discovery initiating, so that is when we made the decision to bring it up with this court.

(#48 at 13:8-15) (emphasis added).

24.     Once again, Kapitan failed to challenge Tucker's accurate characterization that the matter was closed, and similarly failed to clarify with additional information.  *See* ¶¶ 19, 21.

25.     Thereafter, the court ruled on the emergency motion.  The court first stayed discovery as requested by plaintiffs' counsel, and next ordered Kapitan to file within one week union defendants' disqualification motion.  The court expressly articulated its rationale for these orders:

> *I don't know the circumstances of whatever is pending before the Ohio State Bar*.  All I know is the parties had an ENE with Judge Cobb and, at that time, it was thought some limited discovery might bear fruit . . . . So I'm in the dark, to some degree, apart from the statements counsel have made.  *And, of course, those statements are in dispute*.

(#48 at 13:21-14:3).

26.     In so articulating, the court provided notice to each party that it understood their representations about the ODC to be in dispute: that is, Tucker represented that the disqualification matter had been decided, while Kapitan *disputed* that characterization—stated plainly, he led the court to believe that the ODC matter was, in his exact words, "still pending."  ¶ 17.

27.     Before adjourning, the court provided to counsel two opportunities to make further remarks.  (#48 at 15:8-12; 16:4-7).  Kapitan not once, but twice, declined these occasions to clarify the court's incorrect understanding, which owed entirely to his representations.  *See* ¶ 25.

28.     The court concludes that Kapitan's statements regarding the ODC matter were misrepresentations.  The October 30 letter indicated that the matter was "closed."  ¶ 12.  Yet Kapitan's remarks characterized the matter as "still pending," and intimated that union defendants could no longer "wait" for the ODC to review the matter, which further suggested that no action on the complaint had been taken. ¶ 17.

## D.     Kapitan's Misrepresentations Were Intentional

29.     On September 12, 2014, the court ordered union defendants to submit a brief arguing why they and/or Kapitan should not be sanctioned pursuant to this court's inherent power to sanction

for representing the matter at the January 10 hearing as open or pending when, in fact, it was closed. (#105).  *See* ¶¶ 12, 17.

30.    Union defendants filed a brief on October 3, 2014 (#109).  The brief advanced a simple explanation for the repeated misrepresentations: Kapitan was simply confused.  Union defendants specifically contended that he held the erroneous belief that "the case could be considered 'pending'" due to Beckman's statements about submission of later-acquired evidence. (#109-3 at 4).  Thus, to the extent his statements were inaccurate, union defendants state that Kapitan did not intend to mislead the court.  (#109 at 5-6).

31.    For several reasons, the explanation is not credible.  By clear and convincing evidence, the court concludes that Kapitan intentionally misled the court.

32.    Most significantly, the court concludes that Kapitan knew on January 10, 2014 that the matter was not "pending" in the ordinary sense of that word.  Accordingly, he could not describe the matter as "pending" in good faith.  Regarding the disciplinary matter's status as of the October 2013 ENE, Kapitan said that the "Complaint was *pending* before the Ohio Supreme Court as of October."  ¶ 17.  Kapitan's description relied on "pending" in its ordinary sense, i.e., "[r]emaining undecided; awaiting decision."  Black's Law Dictionary 1314 (10th ed. 2014).  The ODC complaint was, in fact, "pending" as of the October 2013 ENE.  ¶¶ 10-12.

33.    Yet a few moments later, Kapitan stated that, as of January 10, 2014, "the [disciplinary] case, actually, is still *pending*."  ¶ 17.  Here, "pending" must take a specific, acrobatic definition:  "closed, but subject to re-open upon the occurrence of various contingencies."  The word, of course, does not inhere that meaning.  Even if it did, Kapitan's additional words belie the possibility that "pending" had in the second instance any meaning other than its ordinary definition. *See* ¶ 32.  Rather than "pending," Kapitan described the ODC matter, as of January 10, 2014, as

"*still* pending." ¶ 17.  The adverb "still" colors the word.  The modifier operated as "remains," and therefore linked the January 10 status to the matter's October 2013 status—that is, open and awaiting the ODC's decision.

34.    In addition, even if the word "pending" in the second instance could flexibly capture the ODC matter's status as of January 2014, to accept his explanation of unintentional confusion, the court must also accept that his twin uses of "pending" had these dramatically different meanings without purpose or knowledge on his part.  That conclusion is implausible.  Kapitan's first use of "pending" demonstrated his knowledge for what the word means.  Further, an experienced attorney like Kapitan, who has demonstrated sufficient capacity and facility with law to be the general counsel of an international labor organization, could not have possibly used "pending" as he did without knowing he would mislead the court.  *See* ¶¶ 1-2, 17.  With his knowledge of common legal language, his decision to use the word "pending" in the second instance without further detail clearly and convincingly establishes that his misrepresentations were intentional.

35.    Another statement confirms that the goal of Kapitan's representations were to persuade the court to believe that the ODC had not yet taken action.  In the same set of remarks, Kapitan told the court that "after those events in early November, . . . it was decided that we [union defendants] *could not wait anymore for the Ohio Supreme Court to review this*."  ¶ 17.  This statement suggested that the ODC was actively considering a disqualification of Tucker as of January 10.  Only if the matter was pending in the ordinary sense of the word could there be anything for which union defendants and Kapitan could wait.  If the matter was closed, there could be nothing for which to wait, as the verb "wait" implies that an expected event will occur.  *See Webster's Third New International Dictionary of the English Language Unabridged* 2570 (1986) (defining "wait" as: "to stay in place or remain inactive *in expectation of*"; "to remain stationary in

readiness *or expectation*"; "to look forward *expectantly*"; "to hold back *expectantly*") (emphasis added).   Therefore, in ordinary English, a lawyer would not state that he and his clients were "waiting" for a disciplinary tribunal to review a matter when there was no certainty that such review would occur.  This is particularly true in the instant case, where Kapitan and union defendants would be "waiting," as of January 2014, for discretionary ODC review that required the submission of additional evidence that Kapitan had not submitted as of April 2014.  ¶ 14.

36.   Further confirming that Kapitan's misrepresentations were intentional is his reiteration of the possibility the ODC may "resolve the issue" after Tucker contended it was closed. *See* ¶¶ 22-23.   Here, Kapitan had a prime opportunity to clarify.   Indeed, additional ODC involvement was at the forefront of his mind at this moment.   Yet he said nothing about *how* the ODC might so resolve, and thereby stood upon the prior statements about the matter being "pending."

37.   In addition, the court's conclusion that Kapitan's goal was to intentionally represent that the ODC matter remained open as of January 2014, *see* ¶ 35, is bolstered by the context of the emergency hearing.  Plaintiffs sought the hearing because union defendants were not complying with ordered discovery.  ¶ 16.  Kapitan, appearing on behalf of union defendants, attempted to explain why the noncompliance was justifiable. ¶ 17.  The pendency of a professional misconduct complaint against plaintiffs' counsel, based upon their purported conflict of interest, is a serious matter, and therefore, is a persuasive reason for noncompliance with discovery.   Union defendants' position would have been significantly weakened if no such complaint were pending—and even further weakened if the court knew that the ODC had already determined that the representation was proper. At bottom, it was to the best interests of union defendants that the court believe, on January 10, 2014, that the Tucker firm may yet be disqualified.

38.     Repeated, glaring omissions also confirm Kapitan's intent.   In unmistakably clear language, Tucker informed the court that the matter "was resolved on October 30th" and "in fact, attorney Kapitan was aware of that."  ¶ 18.  Tucker did not challenge that characterization.  ¶ 21.

39.     The omission discussed in ¶ 38 is not isolated.  At the end of the hearing, Kapitan tacitly declined to clarify what the court expressly described as a "dispute" between the attorneys about the status of the ODC matter.  ¶ 27.

40.     As detailed in the following paragraphs, Kapitan's failure to timely clarify his January 10 statements further belie his claim that the misrepresentations were unintentional.

41.     Tucker understood Kapitan's representations at the hearing to suggest that the ODC complaint against him remained open.  Accordingly, he called the ODC on the afternoon of January 10, 2014.  Don Sheets, the staff intake attorney, informed Tucker that the ODC had no open investigations or complaints against him as of that date.  (#75-3 at 4; #75-4 at 2-3).  Soon thereafter, Tucker filed an ODC complaint against Kapitan.  (#109-6 at 1).  Among other allegations, the complaint sought review of Kapitan's remarks at the January 10 hearing.  (#109-6 at 2).

42.     On April 7, 2014, the ODC wrote to Tucker and dismissed his complaint.  (#109-6 at 1).  With respect to the January 10 characterizations, ODC counsel Amy Stone reasoned that:

> It appears Mr. Kapitan is confused by the policy of this office as it relates to closed files.  We will always tell a grievant in a dismissed file that we will consider re-opening an investigation should we receive new evidence that would warrant re-opening. *This does not mean, however, that a closed file remains open.*

(#109-6 at 2) (emphasis added).

43.     Kapitan received a copy of this letter.  (#109-6 at 2).  Therefore, Kapitan knew on or around April 7, 2014 that his ODC complaints against the Tucker firm were closed, rather than "pending."  Necessarily, he knew on or around April 7, 2014 that all contrary representations made

after October 30, 2013 were false, particularly including his characterizations of the matter as "still pending" in January 2014.

44.     Despite his knowledge, *see* ¶ 43, Kapitan failed to timely file a motion to correct the record.  As his motion for disqualification remained pending in this court, and discovery remained stayed, he allowed the court to remain under the impression that the ODC might independently disqualify the Tucker firm.   His silence past April undermines his contention that the misrepresentations were unintentional.  They are clear evidence that his remarks were precisely what he wanted the court to believe, for he would have otherwise corrected those misstatements.

45.     Given the simplicity of the ODC's explanation in the April 7 letter, *see* ¶ 42, the court also concludes Kapitan could have obtained, easily, additional clarifying information about the status of the ODC complaint against Tucker prior to the January 10 hearing.  Kapitan's failure to do so is inexplicable in light of the ODC's clear and concise explanation in the April 7 letter.  Accordingly, any contentions of "confusion" are not credible.  If anything, Kapitan's confusion was willful; he simply desired to believe the matter was "pending" because it advanced the position of his clients.

### III.     CONCLUSIONS OF LAW

1.     The Supreme Court has long held that a federal court may "discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  Such power "transcends the court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself . . . ." *Id.* at 46.  Under the inherent power, a federal court may sanction counsel or parties who act "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (internal quotation omitted).  However, "[t]he district court's authority to impose sanctions under its inherent powers is . . . not limitless." *Mendez v. Cnty. of San Bernadino*, 540 F.3d 1109, 1132 (9th Cir. 2008).  "Before awarding sanctions under

its inherent powers, . . . the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

2.      Bad faith "includes a broad range of willful improper conduct . . . ." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  Within the context of inherent powers, the Supreme Court has described "bad faith" as fraud practiced upon the court and conduct in which "the very temple of justice has been defiled."  *Chambers*, 501 U.S. at 46 (internal quotation omitted).  Unsurprisingly, the Ninth Circuit has held a party's misrepresentations or purposeful deception constitutes bad faith. *See Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (affirming the district court's imposition of sanctions for bad faith misrepresentations).

3.      Conduct "tantamount to bad faith" is also sanctionable under the inherent power.  The Ninth Circuit has held tantamount to bad faith an attorney's failure to take remedial actions required by his ethical and professional obligations.  *See Gomez v. Vernon*, 255 F.3d 1118, 1134-35 (9th Cir. 2001).  Conduct is also tantamount to bad faith where counsel or parties act recklessly and in combination "with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994.  In the Ninth Circuit, improper purposes include the recitation of "weak" factual contentions "without reasonable and competent inquiry."  *In re Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010).

4.      As the Ninth Circuit has observed, "an attorney does not simply act as an advocate for his client; he is also an officer of the court.  As such, an attorney has a duty of good faith and candor in dealing with the judiciary."  *Pac. Harbor Capital, Inc.*, 210 F.3d at 1119 (internal quotation and citation omitted).  Consistent with this obligation, attorneys appearing in this District must comply with the Nevada Rules of Professional Conduct ("NRPC").  LR IA 10-7(a).

5.      Rule 3.3 of the NRPC, pertaining to an attorney's duty of candor to the tribunal, forbids a lawyer from "knowingly" making "a false statement of fact or law to a tribunal" or failing "to correct a false statement of material fact or law previously made to the tribunal by the lawyer." NRPC 3.3.   The Rule is based upon the American Bar Association's Model Rule ("MRPC"), and although the "comments to the ABA Model Rules of Professional Conduct are not enacted by [the Nevada Rules,]" they "may be consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct, unless there is a conflict . . . ."  Nev. R. Prof. Conduct 1.0A.

6.      Comment 3 to MRPC 3.3 states that:

> An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer.  *However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.*   There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation.

Comment 3, Model R. Prof. Conduct 3.3 (emphasis added, internal citation omitted).  Accordingly, where an attorney makes an assertion based upon his own knowledge to the courts in this District, his failure to make a reasonably diligent inquiry into the matter may violate his professional obligations.

7.      As established by the above factual findings, Kapitan intentionally misled the court on January 10, 2014 as to the status of the ODC complaint against Tucker.   Intentionally misleading the court is bad faith conduct.   Therefore, the misrepresentations are an appropriate basis for sanctions under the court's inherent power.  *See Pac. Harbor Capital, Inc.*, 210 F.3d at 1118.

8.      Alternatively, Kapitan's repeated failure to correct his prior characterizations of the matter as "pending" after April 2014, after which point he clearly knew his prior representations

were false, was tantamount to bad faith.  Under the Nevada Rules of Professional Conduct, which apply to lawyers appearing in this court, Kapitan was required to correct prior, knowing misstatements.  *See* Nev. R. Prof. Conduct Rule 3.3; Comment 3, Model R. Prof. Conduct Rule 3.3; Nev. R. Prof. Conduct 1.0A.  Kapitan's failure to correct is a violation of his ethical obligations to the tribunal, and therefore, is conduct tantamount to bad faith.  *See Gomez*, 255 F.3d at 1134-35.

9.    Kapitan's failure to adequately investigate the ODC procedures prior to making representations about the complaints against Tucker and Baldridge also violated his ethical obligations to the court.  Rule 3.3 imposes upon lawyers in this district a duty to diligent investigate matters about which they testify from personal knowledge.  Kapitan's representations about the ODC complaint were his own, rather than assertions of facts from his clients.  Therefore, this duty arose.  *See* Nev. R. Prof. Conduct Rule 3.3; Comment 3, Model R. Prof. Conduct Rule 3.3; Nev. R. Prof. Conduct 1.0A.  Given the succinct summation of the ODC's procedures in the April 7, 2014 letter from Stone to Tucker, the court concludes that Kapitan failed to diligently investigate the ODC procedures prior to speaking about them.  A minimally competent inquiry would have provided to Kapitan any and all information he needed to accurately discuss the ODC matter on January 10, 2014.  His failure to investigate is conduct tantamount to bad faith.  *See Gomez*, 255 F.3d at 1134-35; *see also In re Girardi*, 611 F.3d at 1062 (finding sanctionable the attorney's recitation of "weak" factual contentions "without reasonable and competent inquiry").

10.    Having found that Kapitan acted in bad faith, or alternatively, has engaged in conduct tantamount to bad faith, the court concludes that sanctions are proper under its inherent power.  *Primus Automotive*, 115 F.3d at 648; *Leon*, 464 F.3d at 961.  As described below, the court jointly sanctions union defendants and Kapitan for these intentional misrepresentations.

## IV.    ORDER

Having thoroughly reviewed the pertinent papers and statements, and in light of the parties' arguments, the applicable standards, and the findings of facts and conclusions of law, the court orders as follows:

1.    The court **GRANTS** reasonable attorney fees to plaintiffs.  Union defendants shall be jointly liable for these costs.

2.    Within twenty-one (21) days of the entry of this order, plaintiffs **SHALL FILE** a motion describing costs and fees associated with: (1) filing the sanction motions; (2) responding to the court's show cause order; (3) postponement of the January 2014 ENE; and (4) other costs directly attributable to Kapitan's January 10 misrepresentations, as plaintiffs contemplated in their response to defendants' show cause brief.  (#113 at 16).  The court will enter a subsequent order in due course with an exact amount.

3.    This order is referred to the Disciplinary Counsel of the Ohio Supreme Court.  The Clerk of Court **SHALL SEND** a copy of this order to:

> Disciplinary Counsel of the Ohio Supreme Court
> 250 Civic Center Dr., Suite 325
> Columbus, OH 43215-7411

4.    Kapitan **SHALL SEND** a copy of this order and a copy of each paper and exhibit cited herein to the ODC.  Kapitan **SHALL TIMELY FILE** notice of compliance with this court.

Kapitan **SHALL COMPLY** with whatever investigation, review, and disciplinary action the ODC deems appropriate.

5.    Because unreasonable delay has already occurred in this case, the court declines at this time plaintiffs' request to preclude Kapitan from continuing his representation of union defendants.  (#113 at 16).  However, the court warns both plaintiffs and defendants that the time for

gamesmanship has passed.  The court will have no further patience for delay, misrepresentations, and violations of applicable rules.  If further conduct of counsel and parties requires, the court will consider additional remedies, including disqualification.

**IT IS SO ORDERED.**

    **DATED**:  December 2, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**