1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ISAAC AVENDANO, *et al.*,                              3:13-cv-00168-HDM-VPC

                                    Plaintiffs,

    v.                                                          **ORDER**

SECURITY CONSULTANTS GROUP,

    *et al.,*

                                    Defendants.

11    Before the court is plaintiffs' motion for attorney fees and costs (#133). Union defendants

12    oppose the amount (#138). Plaintiffs replied (#142). For the reasons discussed herein, the court

13    grants plaintiffs' motion in the amount of $118,720.59.

14                              **I.    BACKGROUND**

15    On December 2, 2014, this court ordered plaintiffs to file a motion for attorney fees

16    (#124) ("The December order"). The December order followed an earlier order to show cause

17    (#105) against union defendants and their counsel, Robert B. Kapitan ("Kapitan"). The show

18    cause order resulted from several inconsistent statements Kapitan made to the court during a year

19    of on-going motion practice relating to plaintiffs' counsel representation of plaintiffs, and also

20    professional conduct proceedings before the Ohio Supreme Court's Office of Disciplinary

21    Counsel ("ODC"), which considered disqualification of plaintiffs' counsel in fall 2013.

22    At a January 10, 2014 emergency hearing, Kapitan first misrepresented to the court the

23    status of the ODC matter. Based upon his representations, the court stayed its prior scheduling

24    and discovery orders.[1]  In the following year, and as a result of his prior and continuing

25    representations, the parties engaged in time-consuming and unmeritorious motion practice—

26    _____

27    [1] The court acknowledges a minor error in the order (#124), as identified by plaintiffs (#133 at 2
      n.1). The court stated in the December 2, 2014 order that plaintiffs requested a discovery stay at
28    the January 10, 2014 emergency hearing. (*Id*. at 4.) The court in fact imposed a stay, but it was
      not at plaintiffs' request (*see* #48).

1    including a motion to disqualify, sanctions motions under Rule 11 and section 1927, and several

2    motions to seal and for *in camera* review related to exhibits to these motions.  Aside from airing

3    their mutual animosities, the parties accomplished little else.  Following its orders on plaintiffs'

4    sanctions motions in September 2014, the court issued a show cause order.  Therein, the court

5    ordered union defendants and Kapitan to explain why they and/or he should not be sanctioned for

6    his misrepresentations about the ODC matter.

7            On December 2, 2014, the court found by clear and convincing evidence that Kapitan had

8    intentionally misrepresented the status of the ODC complaint against plaintiffs' counsel, and that

9    he further failed to comply with his ethical obligations to the court to correct his

10   misrepresentations, had they been unintentional, when several opportunities presented.  Although

11   the court is loath to utilize its power to sanction counsel who appear before it, the court concluded

12   that Kapitan's conduct required its intervention.  Consequently, the court awarded attorneys' fees

13   to plaintiffs and levied other sanctions, including referral to the ODC for further disciplinary

14   action as it deems appropriate.

15           As to fees, the court ordered: "Within twenty-one (21) days of the entry of this order,

16   plaintiffs shall file a motion describing costs and fees associated with: costs and fees associated

17   with: (1) filing the sanction motions; (2) responding to the court's show cause order; (3)

18   postponement of the January 2014 ENE; and (4) other costs directly attributable to Kapitan's

19   January 10 misrepresentations, as plaintiffs contemplated in their response to defendants' show

20   cause brief."  (#124 at 20) (emphasis removed).  Plaintiffs moved for fees, and the parties

21   submitted briefing.  Having reviewed the motion and the parties' positions, this order follows.

## II.    LEGAL STANDARD

23           Calculation of reasonable attorneys' fees is a two-step process.  First, the court computes

24   the "lodestar" figure, which multiplies a reasonable hourly rate by the number of hours

25   reasonably expended in the litigation.  *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir.

26   2014).  The lodestar amount is presumptively correct.  *Mendez v. Cnty. of San Bernadino*, 540

27   F.3d 1109, 1129 (9th Cir. 2008).  Second, and despite the presumption, the court may modify the

28   lodestar amount.  *Carter*, 757 F.3d at 869 (citing *Quesada v. Thomason*, 850 F.2d 537, 539 (9th

Cir 1988) for the relevant factors, as first articulated in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975)).  In this District, the *Kerr* factors are incorporated into Local Rule 54-16.

### III.   DISCUSSION

**a.   Summary of the Parties' Positions**

Plaintiffs' motion seeks $300,843.60 in fees and costs.  Plaintiffs' counsel have included a timesheet (#133-3) identifying the tasks that they believe fall within the ambit of the December order, and documentation regarding certain travel costs.  They seek hourly rates of $550 for partner John A. Tucker, $325 for associate Rachel Baldridge, and $400 for local counsel Ian Silverberg, for hours respectively totaling 287.75, 419.30, and 13.8.  (#133 at 4-5; #133-3 at 15.)  The motion also requests costs of $741.30 for adjustment of travel, and also interest on these amounts at a rate of 3.25 percent.  (*Id*. at 17-18.)

Union defendants challenge the amount on several bases.  First, they argue that recoverable fees are limited to services "directly attributable" to the January 10 statements under the terms of the December order.  Defendants contend that plaintiffs' motion disregards this limitation by including services relating to discovery, the motion to disqualify, non-relevant sanctions motions, and other miscellaneous motions.  (#138 at 6.)  Second, they argue that counsels' invoice is inadequately "broken down" such that "there is no way to know whether time spent on the sanctions motions involved the claims for sanctions related to the January 10 representations . . . ."  (*Id*.)  Third, and relatedly, union defendants contend that any time claimed for the Rule 11 motion is improper, and only a portion of the 1927 is recoverable.  (*Id*.)

Fourth, they claim that the number of hours claimed is unreasonable.  (*Id*. at 10-11.)  Fifth, they request that no time be recoverable for the postponement of the January 2014 ENE, because postponement, in their view, "was due mainly to the filing of the Motion to Disqualify and not to the January 10 misrepresentations . . . ."  (*Id*. at 11.)  Sixth, union defendants argue that the hourly rates requested are not reasonable in this market.  (*Id*. at 12.)  Here, they argue that plaintiffs have "cherry-picked" cases in support of the requested rates, and that they, as plaintiffs' counsel, cannot rely on cases allowing higher rates for defense counsel.  (*Id*.)  Seventh, they argue that plaintiffs have inadequately supported and explained their request for costs attributable to travel,

and therefore, only $10 in costs is appropriate. (*Id*. at 17-19.) Eighth, they argue that plaintiffs have failed to provide authority for their request for interest. (*Id*. at 19.) Finally, union defendants canvass the factors identified in LR 54-16 and, in short, argue that each support reducing the award. (*Id*. at 13-16.) At bottom, they request the court allow fees for only 8.68 hours of work and costs of $10, for a grand total of $1,383.75.

**b.    Analysis**

As a preliminary matter, the court is disappointed by the briefing of the parties. On one hand, plaintiffs move for an amount that is likely case-ending, and they include thousands of dollars in attorneys' fees that, as the court discusses more fully below, fall outside the ambit of the December order. Yet on the other hand, facing what could be draconian sanctions, union defendants remain grossly unhelpful, blithely disregarding the seriousness of this matter—even at this late juncture. Apparently unrepentant for Kapitan's conduct in this matter, union defendants provide an response to the fees motion that, despite its multiple arguments, fails to engage in detailed analysis of the invoice or to provide a rational basis by which the court can reach a determination of what is fair under the circumstances. Union defendants cannot seriously expect this court to conclude that $1,383.75 in attorneys' fees and $10 in costs is an appropriate sanction.

As has been the case throughout this litigation, the court will again shoulder alone the burden of determining the correct result without meaningful guidance from the parties. The court believes the lodestar figure is incorrect, and adjusts the award as described herein.

**1.    Hourly Rates**

First, the court will allow rates in the amount of $450 for Tucker, $250 for Baldridge, and $200 for local counsel Silverberg. As another court in this District recently concluded, "[r]ate determinations in other cases in the District of Nevada have found hourly rates as much as $450 for a partner and $250 for an experienced associate to be the prevailing market rate in this forum." *Eckenrode v. Rubin & Yates, LLC*, No. 2:13-CV-00317-GMN, 2014 WL 4092266, at *7 (D. Nev. July 28, 2014), *report and recommendation adopted*, 2014 WL 4072002 (D. Nev. Aug. 15, 2014). The court believes that the *Eckenrode* rates are appropriate for plaintiffs' trial counsel.

In addition, $200 is an appropriate rate for Silverberg, who as local counsel has only minimal involvement in the litigation and has appeared in this court only rarely.

**2.     Reasonable Hours**

The court has reviewed the invoice submitted by plaintiffs (#133-3) and believes it adequately describes the services associated with the fee request. However, upon reviewing the descriptions, the court has determined that services related to several items are improperly included within the request. These services relate to a motion to seal, motion for *in camera* review, and several motions to strike. The court appreciates the reasonable motivation plaintiffs' counsel might have had for undertaking this work, but none of these items falls within the precise terms of the court's December order. Accordingly, no fees shall be granted for tasks facially related to these matters.

As such, the court begins with the following hourly totals for the prescribed four categories, which the court has calculated based upon the descriptions in the invoice:

| Category | Tucker Hours | Baldridge Hours |
|---|---|---|
| Sanction Motions | 86.6 | 110 |
| Show Cause Order | 50.3 | 69.6 |
| ENE Postponement | 18.8 | 31.5 |
| Other Costs Attributable to the Misrepresentations | 87.9 | 82.5 |

The sanctions motion category consists of services related to the Rule 11 and section 1927 sanction motions. The show cause order consists of services related to the show cause order itself, with 28.7 hours expended by Tucker and 32.2 by Baldridge, and also preparing the fees motion, with 21.6 hours spent by Tucker and another 37.4 by Baldridge. The other costs category includes services related to filing the emergency motion in January 2014, with 12.8 hours spent by Tucker, and 10.6 by Baldridge, and litigating the motion to disqualify, with 75.1 expended by Tucker and 71.9 by Baldridge.

Union defendants are incorrect that the order's reference to "directly attributable" to the January 10 misrepresentations is a limitation on all categories of fees; their reading of the order is contrived and self-serving. The December order plainly identifies four categories. The sanctions motions are separately recoverable—and rightly so, as they are sufficiently related to Kapitan's misrepresentations over several months. If union defendants believed that no fees should be awarded for certain sanctions motions, the proper time to raise that argument was in a motion for reconsideration following the December order, which made plain that fees for the sanctions motions would be awarded.

Moreover, the "directly attributable" category is a catch-all. In the court's view, it easily and appropriately includes litigating the motion to disqualify. Kapitan's repeated remarks led the court to believe that it needed to consider disqualification because the matter had not yet been decided by the ODC; in other words, Kapitan's remarks intimate that bona fide, previously unexamined reasons, might have existed for disqualifying plaintiffs' counsel. The December order concludes that this understanding was an inaccurate one—a misunderstanding that owed only to Kapitan's misrepresentations. Union defendants may have moved to disqualify of their own accord. But for Kapitan's dishonest characterizations, however, the court would not have delayed the timely progress of this case to facilitate review of the disqualification motion that it ordered union defendants to file in January 2014. The motion to disqualify shall be recoverable within the other costs category.

To the above sums, the court makes the following modifications. First, based upon the descriptions, all services claimed for the ENE postponement relate to preparing for the ENE itself—a task required by the Local Rules. As these requests are for services that predate postponement, they are not recoverable under the December order. The court will allow only costs for postponement, as described below. Second, for similar reasons, the court will disallow any fees related to filing the emergency motion. These also predate the misrepresentations.

Third, the court will reduce by half Tucker's hours related to preparing the motion to disqualify, the sanction motions, and the show cause order (but not those hours expended on the motion for fees), as the total hours are excessive in the court's view. Plaintiffs suggest that hours

need not be reduced because they attempted to limit costs by limiting Tucker's role to supervision and strategy, while using Baldridge, "an associate with a lower billing rate," to draft and research. (#133 at 3.)  The invoice and request conflict with that explanation.  The hour totals of the two attorneys are similar, and several descriptions suggest that Tucker took an involved role in drafting and research.  In absence of union defendants' proposal for a more exact method of reduction and accounting for possible duplication of efforts, the court will accept plaintiffs' characterization of the attorneys' work and allow fee recovery commensurate with the stated goal. To do so, the court reduces Tucker's hours to 43.3 for the sanctions motions, 36 for the show cause order, and to 37.6 for the "other costs."

Under these reductions, the court therefore awards the following sums in attorney fees. First, for Tucker's 116.9 hours of services at $450 per hour, an amount of $52,605.  Second, for 251.5 hours of Baldridge's work at $250 per hour, a sum of $62,875.  Third, for 13.8 hours of Silverberg's time at $200 per hour, a total of $2,760.  Therefore, the grand total of attorney fees to plaintiffs shall be $118,240.  This figure is based upon reasonable rates for a reasonable number of hours, as determined by the foregoing considerations.  The court declines to make additional modifications to these amounts based upon the *Kerr* factors, as union defendants' arguments on these factors are conclusory and unpersuasive.  The court further declines to award fees to plaintiffs for the preparation of the reply brief.  (*See* #142 at 20.)

**3.    Costs**

The court awards $480.59 in costs related to the ENE postponement.  These result from last minute flight changes that plaintiffs' counsel have documented.  The court declines to award $260.71, as requested, for cancellation of a rental car.  Union defendants argue, and the exhibits provided by plaintiffs similarly suggest, that no fees were incurred for cancellation of a rental vehicle.  (*See* #133-15) (stating that there is "no charge" for "drop[ping]" the reservation).

**4.    Interest**

The court declines to award interest on the above amounts.  Plaintiffs have not provided authority for their entitlement to the same and declined to respond to union defendants' argument on this point.

## IV.   CONCLUSION

Even under a charitable view, Kapitan's remarks delayed the resolution of this case by over one year,[2] and extinguished the viability of early resolution through this District's ENE process.   Nevertheless, the court remains committed to "the just, speedy, and inexpensive determination . . ." of this matter.  *See* Fed. R. Civ. P. 1.  As the parties know, the court holds monthly case management conferences, at which it presides over minor discovery disputes that most attorneys who appear in this District are able to resolve themselves.  Notwithstanding the on-going difficulties in this case, the court will continue to guide the parties toward a timely resolution.

Plaintiffs seek $300,843.60 in fees and costs.  For the foregoing reasons, the court reduces the award as described and orders that union defendants shall remit to plaintiffs $118,720.59.

**IT IS THEREFORE ORDERED** that plaintiffs' motion (#133) is **GRANTED IN PART.**  Union defendants shall pay to plaintiffs $118,720.59 in attorney fees and costs as a penalty for the conduct of their attorney, Robert B. Kapitan, as described in the court's December 2, 2014 order (#124).

**IT IS FUTHER ORDERED** that this order is **STAYED** until **Monday, April 20, 2015**.  Pursuant to LR IB 3-1(a), a party may file with the District Court an objection to this order within fourteen days of service of the order.  If objections are filed, this stay shall remain in effect until the District Court issues its ruling on the objection(s).  If no objections are filed, the effective date of this order shall be **Tuesday, April 21, 2015.**

**IT IS SO ORDERED.**

**DATED**: April 2, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[2] Under the original scheduling order, the discovery cut-off was January 23, 2014.  (*See* #37.)  As a result of the fracas described in the December order and referenced herein, the discovery cut-off is now April 21, 2015.  (*See* #116.)  The parties are reminded that the court shall grant no extensions of discovery for any reason.

8